UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAN INGRAM,

                              Petitioner,

              v.

UNITED STATES OF AMERICA,

                              Respondent.

Case No. 17-CV-7110 (KMK)
Case No. 14-CR-760 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Pro se Petitioner Sean Ingram ("Petitioner") has filed a Petition, pursuant to
28 U.S.C. § 2255, to vacate, set aside or correct his sentence (the "Petition").  (*See* Petition
("Pet.") (Dkt. No. 62).)[1]  For the reasons stated herein, the Petition is denied.

## I.  Background

Following his arrest on state narcotics charges, Ingram was brought into federal custody
via a writ in August 2015.  Between August and December 2015, Ingram proffered with the
Government regarding the murder of Ryan Ennis and his other criminal conduct.  (Gov't Mem.
of Law in Opposition, Ex. A at 122-124.)  Ennis was murdered by Anthony Grecco during a
robbery at his residence.  Ingram and Andrea Beatty, with whom Ingram had an intimate
relationship, had driven Grecco to Ennis's residence and who after the robbery and murder drove
Grecco from the scene once he told them that the robbery had gone bad.  (Pre-Sentence Report
"PSR" at ¶ 19; Gov't Mem. of Law in Opposition, Ex. A at 94-95.)  On the drive to Ennis's
residence, it was clear to Ingram that Grecco was prepared to use force to collect on the debt.

---

[1] Docket numbers refer to the criminal docket, Case No. 14-CR-760, unless noted
otherwise.

(PSR at ¶ 18; Gov't Mem. of Law in Opposition, Ex. A at 94-95.)

On December 7, 2015, Ingram pled guilty, pursuant to a cooperation agreement (the "Cooperation Agreement"), to a superseding information (the "Superseding Information"). The Superseding Information charged Ingram with: (1) conspiring to rob Ennis, in violation of 18 U.S.C. § 1951; (2) aiding and abetting the robbery of Ennis, in violation of 18 U.S.C. §§ 1951 and 2; (3) aiding and abetting the murder of Ennis, in violation of 18 U.S.C. § 1952; (4) conspiring to distribute a kilogram or more of heroin and five kilograms or more of cocaine, from in or about 2013 up to and including in or about the summer of 2014, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); (5) conspiring to distribute a kilogram or more of heroin and 280 grams or more of crack cocaine, from in or about 2000 up to and including in or about 2009, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); and (6) possessing a firearm in furtherance of a drug trafficking offense, in violation 18 U.S.C. 924(c)(1)(A)(i). (Gov't Mem. of Law in Opposition, Ex. B.) The Government also filed a prior felony information. (Gov't Mem. of Law in Opposition, Ex. C.) As a result, Ingram was facing a mandatory minimum sentence of twenty-five years' imprisonment and a maximum sentence of life imprisonment.

The Cooperation Agreement provided, among other things, that "[t]he sentence to be imposed upon the defendant is within the sole discretion of the Court. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive, and will not recommend any specific sentence to the Court." (Gov't Mem. of Law in Opposition, Ex. D at 4.) It further stated that, even if the Government were to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), "the sentence to be imposed on the defendant remains within the sole discretion of the Court." (*Id.* at 5.) The Cooperation Agreement also plainly stated that "[t]his Agreement supersedes any prior

understandings, promises, or conditions between this Office and the defendant.  No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties." (*Id*. at 7.) At the outset of Ingram's guilty plea colloquy, he was placed under oath and acknowledged that he was answering the Court's questions under penalty of perjury.  (Gov't Mem. of Law in Opposition, Ex. E at 4-5).  In the course of that colloquy, the Court reviewed with Ingram the minimum and maximum sentence for each Count.  (*Id*. at 21-24, 69-70.)  Ingram also confirmed that he had reviewed the Cooperation Agreement with his counsel.  (*Id*. at 30-31.)

Regarding the determination of his sentence, the following exchanges between the Court and Ingram are noteworthy:

> The Court: [T]he determination as to what your sentence will be in this case is solely my call.  I will, of course, consider what [defense counsel] says, I'll consider what the Government says, I'll read the Presentence Report, but [defense counsel] doesn't determine your sentence, [the Assistant United States Attorney] doesn't determine your sentence, nobody in the U.S. Attorney's Office determines your sentence, it's solely my decision; do you understand that?
>
> The Defendant: Yes.

*Id*. at 28.

> The Court: [O]ther than the promises that have been made in this agreement, has anybody made you any promises to get you to plead guilty?
>
> The Defendant: No.
>
> The Court: And, in particular, has anybody promised you what sentence you'll receive if you plead guilty to these six charges?
>
> The Defendant: No.

*Id*. at 35.

Ingram subsequently testified for the Government at Grecco's trial.  In the course of his sworn testimony, Ingram again acknowledged that he had reviewed the Cooperation Agreement

with his attorney.  (Gov't  Mem. of Law in Opposition, Ex. A at 120.)  In particular, Ingram

explained under oath that the Court, and the Court alone, would determine his sentence.  (*Id*. at

122 ("Q. Who decides what your sentence will be?  A. The judge.  Q. Anyone else?  A. No.")).

Ingram further testified that even if the Government submitted a 5K letter, his sentence would be

"in the judge's discretion," and that he could receive a sentence of anywhere from time served to

life imprisonment.  (*Id*. at 121- 122*; see also id.* at 213 (testifying that with a 5K letter, his

sentence would be "up to the judge"); *id*. at 270 ("They would submit that letter to the judge and

then my sentence will be in his discretion.").

Ingram was sentenced on October 20, 2016.  Pursuant to its obligations under the

Cooperation Agreement, the Government moved pursuant to Section 5K1.1 of the Sentencing

Guidelines and 18 U.S.C. § 3553 that the Court sentence the defendant in light of the factors set

forth in Section 5K1.1(a)(1)-(5) of the Guidelines, thereby enabling the Court to sentence Ingram

below the mandatory minimum.  The Court granted that motion.  (Gov't Mem. of Law in

Opposition, Ex. F at 20.)  In its 5K letter and at sentencing, the Government detailed Ingram's

substantial assistance in the Grecco prosecution, as well as Ingram's criminal conduct and

history.  The Government did not advocate for any particular sentence.

In determining the appropriate sentence, the Court examined, as it was required to,

numerous factors under 18 U.S.C. § 3553(a).  The Court found the Guidelines range to be 420

months to life imprisonment, which mirrored the range that was calculated in the PSR and

undisputed by the parties.  (*Id*. at 24; PSR at ¶ 105.)  The Court then considered Ingram's

extensive history of drug dealing and paid particular attention to Ingram's role in the murder of

Ennis.  (*Id*. at 24-25.)  While the Court acknowledged that Ingram was not the killer, the Court

emphasized that "what happened was entirely foreseeable to Mr. Ingram" and that he had "a role

4

in facilitating the murder." (*Id*. at 25-26.)  The Court further noted that following the murder, Ingram showed a "callous indifference" to Ennis's death. (*Id*. at 30.)  The Court also considered the need for general and specific deterrence, noting that but for Ingram's cooperation, a sentence within the Guidelines range would have been appropriate. (*Id*. at 26-27.)  At the same time, the Court explained the importance of accounting for the significance of Ingram's cooperation and his testimony at trial. (*Id*. at 27- 29.)

The Court also considered what sentence Ingram should receive relative to the sentence of 36 months imposed on Beatty. (*Id*. at 30 ("One of the things that I've thought about in particular here is not only what sentence Mr. Ingram should get compared to what he could have gotten if he hadn't cooperated but what sentence he should get compared to what Ms. Beatty got.").  The Court stated that "my view of Ms. Beatty was that her role was less than [Ingram's]," and that accordingly the Court believed Ingram's sentence should be longer than that imposed on Beatty. (*Id*. at 30.)  The Court explained: "Ms. Beatty is many things including a very lost soul.  And I think you're the kind of person who preys on lost souls and I think that your role in this case was more substantial.  I think you roped her in more than she roped you in." (*Id*. at 30.)

The Court ultimately imposed a sentence of 96 months' imprisonment in a judgment that was entered on January 5, 2017. (Gov't Mem. in Opposition,  Ex. F. at 31-32; Ex. G.)

Ingram filed the instant § 2255 motion on September 18, 2017. (Dkt. No. 62.)  He appears to make two claims:  First, that the Government made a promise, separate and apart from those made in the Cooperation Agreement, regarding his sentence; that he plead guilty in reliance on this side-agreement; and that the Government failed to honor this side-agreement (though what that promise was is not entirely clear). (Gov't Mem. in Opposition, Ex. H at 5, 6, 9.)  Second, Ingram argues that the sentence was unduly harsh, and indeed constituted "judicial misconduct."

(*Id*. at 8.)  In particular, Ingram argues that he should have received the same sentence of 36 months that was imposed on Beatty; and that the disparity in sentencing constitutes unfair discrimination and a violation of due process.  (*Id*. at 5, 8.)

## II.  Discussion

### A.  Standard of Review of a § 2255 Petition

A prisoner in federal custody may move to vacate, set aside or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).[2]  "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).  To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error, . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).

---

[2] Title 28 U.S.C. § 2255(a) provides in full:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). A hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Instead, to justify a hearing, the petition must set forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *See Gonzalez*, 722 F.3d at 131.

    B.  Analysis

Petitioner's ostensibly makes two claims. First, Petitioner asserts that the Government made a side-agreement, separate and apart from the Cooperation Agreement, regarding his sentence; that he plead guilty in reliance on this side-agreement; and that the Government failed to honor its commitment. In particular, it appears that Petitioner suggests that the Government promised him a sentence of 60 months' imprisonment, or at a minimum, that the Government promised to advocate for that sentence. (Gov't Mem. in Opposition, Ex. H at 5, 6, 9.) In support of this point, Ingram claims that he pled guilty because the Government said, "'you want to go home right.'" (*Id.* at 6.) Second, Petitioner argues that the sentence was unduly harsh, and indeed constituted "judicial misconduct." (*Id.* at 8.) In particular, he argues that his sentence of 60 months was unfair, in light of his assistance to the Government; that he should have received the same sentence of 36 months given to Beatty; and that the disparity in sentencing constitutes unfair discrimination and a violation of due process. (*Id.* at 5, 8.)

    1.  Alleged Side-Agreement

Petitioner's claim that there was a side-agreement is meritless.

First, Petitioner's self-serving and wholly unsubstantiated claim directly contradicts numerous statements that he made, under oath, before this Court. The Supreme Court has explained that "[s]olemn declarations in open court carry a strong presumption of verity," and "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Based on this principle, courts have made clear that "[a] defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth." *Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010); *see also United States v. Diaz*, 770 F. Supp. 840, 847 (S.D.N.Y. 1991) ("Courts in this Circuit grant considerable deference to apparently truthful statements made by a defendant in the course of a plea allocution."). For example, in *United States v. Gonzalez*, 970 F.2d 1095 (2d Cir. 1992), the defendant alleged that he pleaded guilty based on an alleged promise from the prosecutor that the defendant claimed had been conveyed to him by his defense attorney. The district court rejected the defendant's claim. In affirming the district court, the Second Circuit explained that,

> [a]t the plea allocution, Gonzalez . . . stated unequivocally that he had read the cooperation agreement and was familiar with its content, and that no other offers had been made to him to induce his plea. Thus[,] the District Court could properly reject Gonzalez'[s] unsupported allegations that his plea was the result of reliance on his attorney's incorrect characterization of the agreement and transmittal of an alleged promise made by the prosecutor.

*Id.* at 1100-1101. Moreover, the Second Circuit held that "[n]o evidentiary hearing was required on the basis of these unsupported allegations, which merely contradicted Gonzalez'[s] earlier statements made under oath at his plea allocution. *Id.* at 1101.

*Gonzalez* is on all fours with this case. Petitioner's unsupported allegations in his § 2255 petition cannot overcome his sworn statements both when he pleaded guilty and testified at trial. Indeed, Ingram repeatedly acknowledged that his sentence was in the sole discretion of the

Court.  (Gov't Mem. in Opposition, Ex. E at 28; Ex. A at 121-22, 213, 270.)  And he stated, under penalty of perjury, that no promises had been made to him outside the Cooperation Agreement in order to induce his plea, and that no one had promised him what sentence he would receive.  (Gov't Mem. in Opposition, Ex. E at 25.)  It is based on after-the-fact disappointment with his sentence, that Petitioner claims for the first time that an alleged side-agreement induced him to plead guilty.  Thus, the Court finds that there is no merit to Petitioner's claim, as it directly contradicts his statements under oath.

Second, even if the Court were to credit Ingram's allegations, his claim would still fail. The Cooperation Agreement contained an integration clause, which provided that "[t]his Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties."  (Gov't Mem. in Opposition, Ex. D at 7.)  The Second Circuit has unequivocally held that "[w]here—as here—the Government incorporates into the plea agreement an integration clause expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach."  *United States v. Lenoci*, 377 F.3d 246, 258 (2d Cir. 2004) (internal quotation marks omitted); *see also United States v. Leach*, 562 F.3d 930, 935–36 (8th Cir. 2009) ("[A]n integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." (internal quotation marks omitted)).

Thus, it is no exaggeration to say that Ingram is making the very claim rejected by the Second Circuit. The integration clause in the Cooperation Agreement disavowed any understandings outside of what was contained in that document. Thus, Ingram cannot claim that he was relying on a side-agreement beyond the terms of the Cooperation Agreement, or that the Government was in breach of that side-agreement. By its clear terms, the Cooperation Agreement provided that the Government "cannot, and does not, make any promise or representation as to what sentence the defendant will receive, and will not recommend any specific sentence to the Court." (Gov't Mem. in Opposition, Ex. D at 4.) For this reason, as well, Ingram's claim fails as a matter of law. *See United States v. Insinga*, 287 Fed. App'x 960, 2008 WL 3836340, at *964 (2d Cir. Aug. 12, 2008) (summary order) (explaining that the Government's alleged promise regarding the defendant's sentence made outside the plea agreement "was irrelevant in light of the agreement's integration provision"). Thus, the Court concludes that this claim has no merit and that there is no need to conduct an evidentiary hearing to resolve the claim.

### 2. Unwarranted Disparity/Excessive Sentence

Ingram also asserts that his sentence was unduly severe, but this is no basis to grant his Petition.

First, Ingram's claim that there is undue disparity between his sentence and Beatty's sentence fails as a matter of law. Under 18 U.S.C. § 3553(a)(6), the Court was required to take into account "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" which the Court did. However, the Second Circuit has squarely held that "[§] 3553(a)(6) requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants."

*United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008).  Beyond this, in the Court's view, Ingram was more culpable than Beatty.  Ingram was Beatty's drug supplier and he gave her directions in connection with narcotics sales, and he directed her to drive Grecco to Ossining, New York.  In short, Ingram had a degree of influence and control over Beatty, and he used that to his advantage and to her detriment.  (Gov't Mem. in Opposition, Ex. F at 30).

Second, the Court rejects Ingram's suggestion that his sentence was too harsh in light of his assistance to the Government.  The Court carefully considered Ingram's cooperation, together with all the § 3553(a) factors.  In light of Ingram's extensive criminal history, his facilitating a senseless murder, and his callous indifference following that murder, the Court determined that, but for his cooperation, a sentence within the Guidelines range of 420 months to life would have been appropriate.  It was largely because of Ingram's cooperation that the Court instead imposed a sentence of 96 months, a nearly 80 percent reduction from the bottom of the Guidelines range.  (*Id*. at 24-32.)  In short, there was no error here, constitutional or otherwise, and no basis to believe that was a miscarriage of justice giving rise to § 2255 relief.  Finally, for the reasons set forth above, the disparity in sentencing between Ingram and Beatty does not entitle Ingram to any relief, and the reference to "unfair discrimination" does nothing to change that.  (Gov't Mem. in Opposition, Ex. H at 4).  For these reasons, Ingram's claim is denied.

### III.  Conclusion

For the reasons discussed above, the Court dismisses Ingram's Petition for Writ of Habeas Corpus.

Because Petitioner has not made a substantial showing of the denial of a constitutional right and because the Petition has not yet been dismissed in full, a Certificate of Appealability

shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 62), and to mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: October 28, 2020
       White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE